UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| *SUSAN J. BICKFORD,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 05-236-P-S* |
| | ) | |
| *JO ANNE B. BARNHART,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question whether the commissioner supportably determined that, when abstinent from drugs and alcohol, the plaintiff had no severe emotional impairments. I recommend that the decision of the commissioner be vacated and the case remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the medical evidence established that the plaintiff had substance-addiction disorders, impairments that were severe but did not meet or equal the criteria

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 22, 2006 pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 3, Record at 26; her statements concerning her impairments and their impact on her ability to work were not entirely credible in light of inconsistencies in her allegations, reports of treating and examining practitioners, and her medical history, Finding 4, *id*.; she lacked the residual functional capacity ("RFC") to maintain a regular eight-hour work day or forty-hour work week, Finding 5, *id*. at 27; she was unable to perform past relevant work as a certified nurse's aide, clerk, assistant footwear manager, meat clerk or dishwasher, Finding 6, *id*.; if she abstained from substance abuse, she would have no work restrictions, Finding 7, *id*.; if she abstained from substance abuse, she could return to her past relevant work, Finding 8, *id*.; her alcoholism and drug addiction were contributing factors material to a determination of disability, Finding 9, *id*.; and she therefore had not been under a disability at any time through the date of decision, Finding 10, *id*.[2] The Appeals Council declined to review the decision, *id*. at 6-8, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process, at which

_____

[2] Inasmuch as the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through at least March
*(continued on next page)*

2

stage the claimant bears the burden of proof of demonstrating inability to return to past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's arguments also implicate Step 2 of the sequential process.  Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* at 1124 (quoting Social Security Ruling 85-28).

The plaintiff complains that the administrative law judge (i) veered from the prescribed analytical frameworks for evaluation of mental impairments and determination whether drug or alcohol abuse is material to a finding of disability; (ii) erred in failing to find severe impairments of Post Traumatic Stress Disorder ("PTSD"), anxiety, bipolar disorder and depression; and (iii) evinced bias toward her, justifying remand to a different administrative law judge.  *See generally* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 8).  I agree that the Record lacks substantial evidence in support of the finding that absent

---

31, 2007, *see* Finding 1, Record at 26, there was no need to undertake a separate SSD analysis.

active drug and alcohol abuse, the plaintiff had no severe mental impairment.  That error warrants

remand, although the plaintiff has not made a showing of bias sufficient to justify remand with

instructions to assign the case to a different administrative law judge.

## I.  Discussion

As the plaintiff points out, *see id*. at 2, the commissioner's regulations prescribe in some detail

the manner in which adjudicators are to determine whether drug or alcohol abuse materially

contributes to disability.  Those regulations provide, in relevant part:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b), 416.935(b).

As the plaintiff observes, *see* Statement of Errors at 2, in this case the administrative law judge

stated in conclusory fashion, with no symptom-by-symptom analysis, that she was disabled by

substance abuse but that, if she  abstained from abusing substances, she would have "no work

restrictions" and could return to past relevant work, *see* Findings 5-9, Record at 27.

This analysis leaves something to be desired.  First, no treating or examining physician had

opined that the plaintiff was disabled by substance abuse.  The plaintiff told at least one consultative examiner that she had last used alcohol in May 2002 (the month of her alleged onset of disability) and had not used illicit drugs in 2002, *see, e.g., id*. at 84, 311, and Disability Determination Services ("DDS") non-examining consultants did not  address the question whether any of her limitations stemmed from ongoing substance abuse versus other mental impairments (although one of those consultants, Lewis F. Lester, Ph.D., characterized her substance-abuse disorder as "in questionable remission"), *see, e.g., id*. at  134-37 (Lester Mental RFC Assessment dated November 27, 2002), 138-52 (Lester Psychiatric Review Technique form ("PRTF") dated November 27, 2002), 153-66 (PRTF by David R. Houston, Ph.D., dated April 10, 2003).  Nor was a medical expert present at the plaintiff's hearing.  *See id*. at 439.  Recognizing this lack of evidence, the administrative law judge purported to give the plaintiff "the benefit of any doubt" in concluding that she was in fact disabled, albeit solely by active substance abuse.  *See id*. at 25-26.  He then flatly stated that, absent active substance abuse, she had no restrictions in her ability to perform past relevant work.  *See id*. at 26.

This error in application of the substance-abuse analytical framework might yet have been harmless to the extent the Record supported a finding that, absent active drug and alcohol abuse, the plaintiff had no severe mental impairment.  However, it does not.  After examining the plaintiff on October 30, 2002, Greggus Yahr, Ph.D., a DDS consulting examiner, assessed her as suffering from (i) PTSD; (ii) dysthymia; (iii) generalized anxiety disorder with features of panic and agoraphobia; and (iv) features of dependent personality disorder.  *See id*. at 318.  He noted "serious impairment in social and occupational spheres."  *Id*.  He stated that, although it was premature to conclude that the listed diagnostic conditions resulted in permanent disability, "at the present time, [they] indeed represent an inability for [the plaintiff] to be in the work place."  *Id*.

5

Subsequently, in a PRTF dated November 27, 2002, Dr. Lester opined that the combination of anxiety disorder, depressive disorder and polysubstance abuse in questionable remission caused mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace, with no evidence of episodes of decompensation of extended duration. *See id*. at 148, 151-52. In his PRTF dated April 10, 2003, Dr. Houston did indeed find that the plaintiff's mental impairments had become non-severe, stating: "Her depression + anxiety ha[ve] improved to the point of being non-severe. PTSD + bipolar are not supported. Some recent increase in anxiety, due to situational stressors (i.e. testifying). Overall, her mental impairment is non-severe." *Id*. at 165. The administrative law judge placed much stock in the Houston PRTF, *see id*. at 24; however, in this case that reliance was misplaced.

The First Circuit has made clear that, in appropriate circumstances, the opinion of a non-examining consultant can constitute "substantial evidence" in support of an administrative law judge's finding. *See, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

In this instance – as underscored by counsel for the plaintiff at oral argument – one fairly can infer that Dr. Houston either overlooked, or did not have available to him, significant evidence detailing a two-day hospitalization in February 2003. On February 3, 2003 the plaintiff had presented to the Maine Medical Center ("MMC") emergency room stating that she felt suicidal, had developed a

plan to commit suicide and was "at the end of the rope." Record at 338. She was assessed at MMC as suffering, *inter alia*, from "[b]ipolar affective disorder, recurrent, depressed, severe, without psychotic features; polysubstance abuse." *Id*. She was found to have a GAF, or Global Assessment of Functioning, on admission of 20. *See id*. A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 20 reflects "[s]ome danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal person hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)." *Id*. (boldface omitted). The plaintiff was admitted that day, and discharged on February 5, 2003. *See* Record at 338 (bottom of page).

Dr. Houston listed the medical records he had reviewed in detail; however, there is no mention of records pertaining to the February 2003 hospitalization. *See id*. at 165. Given the *de minimis* nature of the Step 2 (severity) burden, one cannot be confident that, had Dr. Houston seen these records, he would have continued to believe that the plaintiff's mental impairments were non-severe and/or that her alleged bipolar disorder was unsupported. Remand accordingly is warranted.

A final issue remains. The plaintiff requests remand with instructions to submit the case to a different administrative law judge on the basis of asserted bias against her. *See* Statement of Errors at 4. She cites, as examples of the administrative law judge's asserted bias:

1.      His insinuation at hearing that she had traded sexual favors for drugs.  *See id.*; Record at 457-59.

2.      His expression of disbelief of her testimony concerning the price of drugs, followed by a lecture concerning his knowledge of that subject derived from his days as a prosecutor and defense attorney.  *See* Statement of Errors at 4; Record at 460.

3.      His statement, prior to the conclusion of hearing: "[Q]uite frankly[,] I don't believe you."  *See* Statement of Errors at 4; Record at 459.

4.      The cursory analysis contained in his decision.  *See* Statement of Errors at 5.

In circumstances in which "the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." *Sutherland v. Barnhart*, 322 F. Supp.2d 282, 292 (E.D.N.Y. 2004).  A plaintiff bears the burden of overcoming the presumption  that his or her case was decided by an honest and impartial adjudicator. *See, e.g., Brasslett v. Cota*,  761 F.2d 827, 837 (1st Cir. 1985) ("[A] plaintiff alleging impartiality must overcome the presumption that administrators are men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances, and must demonstrate an actual risk of bias or prejudgment.") (citation and internal quotation marks omitted). Such a showing is not easily made; "the presumption [of impartiality] can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present."  *Collier v. Commissioner of Soc. Sec.*, 108 Fed. Appx. 358, 364 (6th Cir. 2004) (citations and internal quotation marks omitted). "Stated differently, any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference."  *Id.* (citation and internal quotation marks omitted).

The plaintiff in this case fails to make the requisite showing. The administrative law judge understandably was skeptical of the plaintiff's claim that she had not paid for drugs during a time she had a $400-a-day heroin habit, but rather was supplied them by one or more drug dealers in exchange for providing a place to stay and/or a place to take drugs. *See* Record at 457-60. Further, as discussed in his decision, the administrative law judge had other bases for questioning the plaintiff's credibility, most notably her provision to various health-care providers of conflicting sobriety dates. *See id.* at 22; *compare, e.g., id.* at 192 (emergency department intake-assessment note of April 6, 2002 indicating that plaintiff reported stopping heroin six months earlier, having occasionally used it the prior month, and having used cocaine the prior night) *with id.* at 311 (report of DDS consultative examiner dated October 17, 2002 indicating that plaintiff reported using "no illicit drugs over the year"). Dr. Lester, as well, observed that he found the plaintiff's "allegations of being anxious, depressed and having unstable moods" only "partially credible" because "[s]he gave discrepant information about current substance abuse to consultants, telling medical CE that she has not used 'illicit drugs over the year' but acknowledging only two months of abstinence at the psych CE." *Id.* at 151-52 (emphasis omitted).

Finally, while – as discussed above – the decision in this case was not free from error, it was not so cursory as to signal bias. The administrative law judge summarized the plaintiff's allegations, the medical record of evidence and the experts' opinions in some detail, providing specific reasons (backed by Record citations) for discrediting the plaintiff's allegations and for crediting some expert opinions over others. *See id.* at 18-26.

A directive that this case be assigned to a different administrative law judge accordingly is unwarranted in this case.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED**

and the case **REMANDED** for proceedings not inconsistent herewith.


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge